UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| KEVIN R. HARDING, ) ) PLAINTIFF ) ) v. ) ) AETNA LIFE INSURANCE ) COMPANY, ) ) DEFENDANT ) | CIVIL NO. 2:15-CV-411-DBH |

**DECISION AND ORDER ON CROSS-MOTIONS FOR JUDGMENT
ON THE ADMINISTRATIVE RECORD**

The issue in this case is whether settlement proceeds resulting from a general release for injuries from a car accident amount to "other income benefits" that can be offset against disability benefit payments otherwise due under an employee disability insurance plan provided by a group life, accident, and health insurance policy. Both parties have moved for judgment on the administrative record.[1] I conclude that the language of the insurance plan supports the insurance carrier's decision to offset a portion of the proceeds.

### BACKGROUND

As a result of a car accident, the plaintiff Kevin Harding has received disability benefit payments from the defendant Aetna Life Insurance Company under a plan that his employer offered. R. at 205, 366. Harding also obtained

---

[1] Citations to the administrative record (with leading "0s" omitted for reader clarity) are reflected as "R. at [page number]."

a $100,000 settlement (after attorney fees, $76,471.33) from the driver of the other vehicle and that driver's insurance company. Id. at 381, 385. Aetna notified Harding that the settlement would reduce its disability payments to Harding, id. at 247, 385-86, because of language in the insurance plan that provided: "Any other income benefits you are eligible for may affect your benefits from this plan. The amount of the other income benefits will be subtracted from your monthly LTD benefit for which you are eligible." Id. at 37.[2]

Harding filed this lawsuit to challenge Aetna's determination that his settlement amounted to an "other income benefit" that could be offset against his disability benefit payments.

## JURISDICTION

This is a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Federal courts have subject-matter jurisdiction over ERISA claims. Id. § 1132(a)(1)(B), (e); 28 U.S.C. § 1331.

## STANDARD OF REVIEW

The judicial standard of review for a denial of benefits in an ERISA case is *de novo,* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In this case, Harding's disability insurance plan is governed "by applicable federal law and the laws of Texas." R. at 28. Texas law prohibits discretionary clauses in group health insurance policies issued after February 1,

---

[2] The arithmetical calculations are not disputed, only the proposition that Aetna can offset *any* of the settlement amount.

2011, that include "disability income protection coverage providing for periodic payments during disability due to sickness and/or accident." 28 Tex. Admin. Code §§ 3.1201–3.1203. Because Harding's policy was issued on August 1, 2014, R. at 28, any discretionary clause cannot apply, and I must apply the *de novo* standard of review, as Aetna concedes. Def.'s Mot. at 4 (ECF No. 18).

Under the *de novo* standard of review, I "grant no deference to the administrators' opinions or conclusions." Richards v. Hewlett-Packard Corp., 592 F.3d 232, 239 (1st Cir. 2010). "In other words, [I] stand in the shoes of the administrator to determine whether the administrative decision was correct." Id. (internal quotation marks omitted).

## ANALYSIS

Language in plans governed by ERISA is interpreted under principles of federal common law. See Forcier v. Metropolitan Life Ins. Co., 469 F.3d 178, 185 (1st Cir. 2006). "That body of law requires that [courts] accord an ERISA plan's unambiguous language its plain and ordinary meaning." Id. Under *de novo* review, ambiguous plan terms must be strictly construed against the drafter/insurer (in this case Aetna). See Stamp v. Metropolitan Life Ins. Co., 531 F.3d 84, 93 (1st Cir. 2008).

The Aetna disability insurance plan states:

> Any other income benefits you are eligible for may affect your benefits from this plan. The amount of the other income benefits will be subtracted from your monthly LTD benefit for which you are eligible. If the result is less than the minimum monthly benefit shown in the *Schedule of Benefits*, the plan will pay an amount equal to the minimum monthly benefit. Please refer to the *Other Income Benefits* section of this Booklet-Certificate for details as to which other income benefits may reduce your monthly LTD benefit.

3

R. at 37 (emphasis in original).  The "Other Income Benefits" section of the plan states:

> Other income benefits can affect the monthly benefit described in the long term disability coverage section.  When calculating the benefit payable, other income benefits that you, your spouse, your children or your dependents are *eligible* for because of your disability or retirement are taken into consideration.
>
> The other income benefits considered when your benefits payable are calculated are:
>
> . . .
>
> Disability payments from underinsured motorist (UIM), uninsured motorist coverage (UM), liability insurance or other sources for a disability caused by a third party.  "Other sources" include (but are not limited to) damages or a settlement received through legal action.

Id. at 40-41 (emphasis in original).  The plan states that it will apply "Other Income Benefits" in the following manner:

> The part of a lump sum or periodic payment you receive for disability will be counted as an other income benefit, even if it is not specifically allotted or identified as such.  If there is no proof acceptable to **Aetna** as to what that part is, **Aetna** will consider 50% to be payable for your disability.

Id. at 42 (emphasis in original).

Harding has the burden of proving by a preponderance of the evidence that he is entitled to disability benefits—in this case, the benefits that Aetna claims to have overpaid and is now attempting to claw back.  See Gent v. CUNA Mut. Ins. Soc'y, 611 F.3d 79, 83 (1st Cir. 2010).  I must "'independently weigh the facts and opinions in the administrative record to determine whether the claimant has met [his] burden . . . .'"  Gross v. Sun Life Assurance Co. of Can.,

4

734 F.3d 1, 17 (1st Cir. 2013) (quoting Scibelli v. Prudential Ins. Co. of Am., 666 F.3d 32, 40 (1st Cir. 2012).

I start with the language of the plan. It states that "[a]ny other income benefits [the insured is] eligible for may affect [his] benefits from this plan" and then refers policyholders to the "Other Income Benefits" section of the plan for details on which types of other income may reduce monthly benefits. R. at 37. One source of income that the plan takes into consideration under the "Other Income Benefits" section is "[d]isability payments from . . . other sources for a disability caused by a third party. 'Other sources' include (but are not limited to) damages or a settlement received through legal action." R. at 41. The settlement agreement that Harding signed released the other driver and his insurance company from

> all claims, demands, damages, bills, judgments, actions, causes or causes of action, on or account of or arising out of or resulting from an incident which occurred on or about 6-15-14 involving Kevin Harding for all claims or demands in law or in equity which Kevin Harding, his/her heirs, executors, administrators, agents or assigns, can, shall or may have against [the other driver] and the [other driver's insurance company].

R. at 381.

First, I must decide whether the settlement agreement constitutes a "disability payment from [an] other source caused by a third party." Harding says that it cannot be considered a disability payment because the settlement agreement never uses the term "disability," Pl.'s Mot. at 4, 6-7 (ECF No. 16), and because "disability" as used in the plan is a term of art that the settlement agreement could not possibly have covered, id. at 4-7. While it is true that the

5

settlement agreement does not explicitly list "disability" as a claim that Harding is releasing, the agreement's very broad language covering "all claims, demands, damages, bills, judgments, actions, causes or causes of action, on or account of or arising out of or resulting from" the accident certainly includes disability-related damages.  This was not a settlement agreement that listed specific categories for which Harding was releasing the other driver and the insurance company; instead, it was a general release for *all* legal liability.  There is no doubt that if Harding were to sue the other driver for disability payments, the other driver could successfully invoke the settlement agreement to thwart the lawsuit.

      The disability plan also states:

> The part of a lump sum . . . you receive for disability will be counted as an other income benefit, even if it is not specifically allotted or identified as such.  If there is no proof acceptable to **Aetna** as to what that part is, **Aetna** will consider 50% to be payable for your disability.

R. at 42 (emphasis in original).  Since nothing in the broad settlement agreement specified what portion should be allocated toward disability payments (or any category of payments), Aetna was entitled to use this plan provision to assign 50% to the disability offset, which is what it did.

      I am not persuaded by Harding's argument that "disability" as used in the "Other Income Benefits" section of his plan must have the same meaning as the plan's "Test of Disability."  The "Test of Disability" is the specific procedure Aetna uses to determine whether a policyholder is incapable of working and therefore eligible for disability benefits.  The "Other Income Benefits" section applies the term "disability" to settlement agreements negotiated by the insured employee with third parties.  It would be unreasonable to infer that it applies the exact

6

"Test of Disability" spelled out in the plan—a test with which a third-party would have no familiarity. When the "Other Income Benefits" section of the plan states that "disability payments from . . . other sources" (in this case the settlement agreement) can be offset, the most logical interpretation of that phrase is payments made to an individual because he was disabled and unable to work. "'A Contract is to be interpreted in a manner which gives reasonable effect to its terms and conditions.'" Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 586 (1st Cir. 1993) (quoting Manchester Knitted Fashions v. Amalgamated, 967 F.2d 688, 694 (1st Cir. 1992)).

Even if I were to read the "Other Income Benefits" section's use of the term "disability" to have the exact meaning that Harding urges, the outcome would be no different. Harding's car accident caused injuries that prevented him from working, he met the plan's specific "Test of Disability," R. at 366, and his settlement proceeds from the other driver and insurance company released them from any claims based upon his accident-caused disability.

## CONCLUSION

The defendant Aetna's Cross-Motion for Judgment on the Administrative Record is **GRANTED**, and the plaintiff Kevin Harding's Motion for Judgment on the Administrative Record is **DENIED**.

**SO ORDERED.**

**DATED THIS 25TH DAY OF JULY, 2016**

                                          /S/   D. BROCK HORNBY
                                          **D. BROCK HORNBY**
                                          **UNITED STATES DISTRICT JUDGE**